Last case today is 417-0812, Marriage of Heflin, so for the felon, Rick Berticchio, you are he sir? Yes sir. And for the appley, Rachel Silger Schmidt? Yes sir. Okay, Mr. Berticchio, you may proceed. Thank you. Please accord, counsel. Counsel. My name is Rick Berticchio. I represent Lisa Heflin, who is the respondent appellant on this appeal. This appeal is directed to a post-judgment of disillusion issues. They were all financial and child support. The first issue I want to address is child support. We're talking about both what is current support and an order for past support based on a time between filing a motion asking for child support and the court's final order. The issue really is whether the court used the right formula to calculate child support. The law changed, as your honors are aware, as of July 1st, 2017, under 755 ILCS 5 backslash 505, who went to an income sharing. The statute applied stated that all calculations of child support after July 1st, 2017, would be the income sharing as opposed to the old method where it was a percentage of the non-custodial parent's income. Significant facts in this case is that the two parties had two children, Eric, who was born March 27th, 1998. He reality turned 18 before the child support order was entered. And Kyle, September 1st, 2000, was his birth date, and he will soon turn 18. Your honors, the court, under the new law, was to take both of the parties' income, add it, and then apply the percentage to each party's income. That was effective for all calculations after July 1st, 2017. The original judgment of disillusion of marriage, going back to July of 2013, provided that the children were, week by week, switching between the parties' homes. They both lived in and around Monolive, Illinois. And the court specifically had a clause providing, and it said, page 66 in the record, that no child support was going to be paid by either parent. Now, the court, at paragraph 66 in its order of October 20th, 2017, denied our request that the new law apply. That you income average to determine how much child support is to be paid. The court was wrong in its finding that this was decided before July 1st, 2017. The court relied on, first, by saying in that paragraph 16 of the order that you're looking at, that the new law specifically states enactment of the new law in itself is not enough for modification. We didn't say that it was. We're not contending just because there's a new law. The original judgment of disillusion of marriage said no child support. Part and parcel among a lot of things decided by this court in these post-judgment disillusion of marriage proceedings was whether custody was going to change. It then was now called parent responsibility and parenting time versus custody and visitation. But just calling it custody, it changed. The court actually had an order in February of 2017 now saying that the remaining minor child, because the other one had just turned 18, full-time parenting responsibility was granted to Mr. Heflin. As a result of that, we now needed to calculate a new child support. The issue is how do you apply which law? Well, the law is clear that after July 1st, 2017, if the court does any calculations for child support, it must apply income averaging. But at paragraph 16 of its order, the court said they're denying that. One reason they said just because there's a new law doesn't mean there's modification. As we said, that wasn't the basis. The basis was that in February, you now change custody and full-time custody went to Mr. Heflin. So now he's entitled to child support. He actually had asked for a modification of child support back in April of 2016, but it took all the way until February of 2017 before the custody parenting responsibility actually changed. So when did the court decide this? When were the issues and information presented? Perhaps the best way, and clearly the best way, not perhaps, is looking at the court's own docket entries. At A40, included in our brief, and C847, there's the court's docket entry of May 4th, at a time when the case was set for resolution of all issues which would have included child support. The court entered a docket entry that says, The party with respective attorneys appear. Parties affirm in open court that in lieu of oral testimony today, each side will submit a position statement along with supporting exhibits by June 15th, and each side may file a written response to the other position statement by July 14th. Now, our response is going to be directed to the exhibits that they filed, since this was substantially a documentary case. Your response is essentially just argument. All the exhibits would complete all the evidence. The exhibits would be only admitted, not just argued, because there was no hearing where we said we filed this exhibit. What was submitted with the exhibits would be the basis for the ruling, and thereafter you have arguments as to what the court should do. Well, I agree in the normal circumstances for that. However, there were certain exhibits in our post, and it's in the record, our post-trial memorandum, our post-filing, the one that was due by July 14th, arguing that that exhibit shouldn't be considered. This exhibit shouldn't be considered. Unlike a trial, where we have a trial, I move for admission of an exhibit, counsel objects, the court rules. Now, the court can't take it under advisement, but the court rules as to whether this is in evidence. In this case, nothing was in evidence until July 14th. The documentary then went on as your Honor's ruling. Well, it was all submitted. Your objections were thereafter. Yes, sir. On page 8 of the brief filed by the appellee, she cites the in-ring marriage of Cole in support of the 5th District decision, and in your reply brief, you don't mention it. Your Honor, if I can grab my... Go ahead. I don't think that her case, if I didn't mention it, I perhaps should have, but I don't think that case is applicable because it wasn't on that issue. It was decided in 2016. A case decided in 2016 can't control how a new law, effective July 1st, 2017, is going to apply. That case was on child support formulas, but not on this one. That case talked about using the wrong formula, but the case in itself cannot be the basis to... This is what the 5th District wrote in that case. It was a different context, but back in 2014-15, the husband argued in that case that the court erred by not applying the amended version of the act, which took effect January 1, 2015. It is the court to not issue its order until well after the effective date, and the 5th District rejected that argument and said the following. All of the events that shaped the trial court's opinion in formulating its ruling occurred in 2014. The evidence was closed. The matter had been submitted to the court for the rendering of its decision all in 2014. The matter was taken under advisement, but not ruled on until 2015, after the effective date of the new statute does not warrant retroactive application of the law. That was cited and argued by the appellee. Well, Your Honor, if I didn't respond, I apologize, but my response is exactly this. My impression is you didn't respond because you had nothing to say. No, I have a lot to say. Well, you know, see, that's why God invented reply briefs, Counsel. So that you could... When you have a lot to say, as we're thinking about how to resolve these cases, we have the benefit of your brief on what you're saying, but go ahead and say it now. Your Honor, in that case, the evidence and all the activities as to what was going to make up the child support closed in 2014. They decided the case in 2015 when a new statute was in effect. In this case, the new law says differently. It doesn't say changing. It says any time a court does a calculation after January 1, 2017. In this case, there was no calculation prior to when the court took the matter back from the clerk's office on July 17, 2017. This wasn't a recalculation. This wasn't a change. This was a calculation of child support to be paid by one party to the other for the very first time. It's absolutely distinguishable from the Cole case. The new law doesn't say, let's look at what your income was for the past three years on average. It says after July 1, 2017, if you are determining child support in court, you have to use income averaging. The trial court in this case, in a extraordinarily thoughtful and carefully written 12-page order on this subject, wrote the following. The court denies Lisa's request for the application of the new child support guideline. The new statute itself says that the enactment of the new statute alone is not enough for modification. This case was set for hearing well before July 1, 2017 enactment date, and the party's proposed judgments were due well before that effective date. Considering the facts stated herein, the prior statute and child support law will be applied. Why isn't that an entirely sensible resolution? Because of numerous things that aren't true. What's not true? First of all, talking about the new statute, talking about just the enactment itself doesn't justify modification, and that doesn't apply here. Then you can go back to the day it was set for hearing. No, that's not what the new law says. The new law says if you calculate child support any time after July 1, 2017, you must use the income sharing. It doesn't talk about, well, if there's other evidence that had previously been heard. It doesn't say that at all. It says court, if you are, trial court, if you are going to tell me what child support should be after July 1, 2017, then you have to use income sharing. It doesn't even say if you heard evidence, which they didn't. It doesn't even say if you had a hearing, which they didn't. It says if you calculate child support. When were these court's calculations done? They had to have been done after July 17, 2017, simply because up until that time, the court didn't take anything that the party set into consideration. I mean, if you look at the docket entry of May 4th, it tells you that. That's when the court made the calculation. That should have been the appropriate law. This case is completely distinguishable from the Cole case, where the new law in 15 just changed percentages and the manner in which you were going to apply it. But this one didn't change that. This law said from now on. No, it's a new law. Why isn't the same issue applied? That is, what's the effective date of the new law, and how do we deal with it? Effective date of new law, July 1, 2017, you have to calculate child support, and that's what does apply. We had a new law in Cole, too, and the 5th District in Cole said, under the circumstances there, they didn't have to apply it. Your Honor, the cases, you know, if I just have to say I differ with Your Honor, the new law in this case told you how you calculate child support for a new procedure, an income sharing. The court said we had in Cole, we had the hearings in 14, all the evidence was about what happened in 14, and just because we didn't make the decision until 15, this case is back to 14. The only thing different here, it seems to me, is we have oral arguments submitted in writing. And I'm sorry, I didn't quite understand. The only thing different here, it seems to me, is we have oral arguments after July 1 submitted in writing, all the evidence was presented earlier. No, that's just not true, Your Honor. There was no evidence presented before July 1. No, the written submissions. The written submissions first. And the other evidence that had been presented in this case since forever. Well, but none of the other evidence ever got to the issue of what child support should be. And the only documentary evidence was evidence that were submitted along with the briefs, and then subsequently been subject to reliance by the other party to make objections to the brief, to make objections to the evidence. Evidence is not submitted in this case until after the second briefs that were due, and the court took the banner back under its bite. And, Your Honor, I'll continue to go over this issue, or I'd like to move on. Go ahead. Thank you. The second issue is that part of the court's order, they awarded the 529 college savings account and some other custodial accounts to Mr. Heflin. The evidence was undisputed that during their marriage they established 529 accounts for both children. Mr. Heflin had made a motion for non-minor child support related to the oldest child, Eric Heflin. The court awarded the 529 account for Eric Heflin to Mr. Heflin saying in response to the petition for non-minor child support. A couple of things were wrong with that. First, the law on 529 accounts requires expenditures only to be directed to higher institutions of learning, colleges, universities. If, in fact, and because this matter's been on appeal and because nothing has happened with these accounts, it's been stayed pending appeal, Mr. Heflin takes this money and does anything other than spend it through a higher institution of learning will result in tax consequences for both of these parties. That's not what the law allows as to 529 accounts. Further, there was no evidence, none, submitted or argued directed to this is the post-non-minor high school support. The court made a finding that the child lived with Mr. Heflin during his freshman year and the court said sophomore year. By the way, the child didn't even attend sophomore, didn't even attend school the second year. But he made that finding and said, so we're going to give him the 529s to pay for the expenses he must have had while the child lived with him. That's not what the law allows. Yes, you can get room and board, you can get expenses, you can get transportation expenses under statute, but you need to put on some evidence to show what it is. They didn't put on any evidence. There's no documentary evidence, no referring in the record in their position statement, nor in the reply brief, nor in brief submitted to this court, that Exhibit 27 is a listing of the transportation expenses I had. So, Your Honor, the court was wrong in dealing with the 529 account and I realize my time is running short, so I want to quickly mention a couple issues. The third issue was awarding to the husband reimbursement for the AT&T account for telephone expenses. Their only response was, well, you asked for it too, but yours was before cutoff date. We withdraw ours. The original judgment of disillusionment said they're to share medical and educational. No one ever made a finding, no one ever requested a finding that AT&T expenses were educational expenses. Kids have a cell phone. I don't know how this proved to be educational expenses just because they do. The fourth issue, Your Honor, and I do put it in detail in my brief at pages 34 to 39, were the reimbursement for medical and expenses. You'll find that the court was confused. It didn't know who cited what exhibit, who submitted them. I pointed it out in my brief.  The final issue was that in the original divorce, the court said divide, split the tax exemptions. And when there's only one, then you trade back and forth. This time, the court said, I'm going to award them both to Mr. Heflin. But that's the same court that said, you've got to pay $22,000 worth of past child support and $1,400 a month of current child support. But I'm still going to award him all the exemptions for 2016, which he paid 10 months worth of back child support, and all future years. So under the court's order, he gets all the exemptions for 17, 18, 19, however long they apply, even though Ms. Heflin is paying a huge child support. The court, that decision is against the manifest way to the evidence, and it should not be sustained by this court. Okay, thank you, counsel. Ms. Schmidt? May it please the court, counsel? I would actually like to work in reverse order. However you wish. So first addressing the tax issue, who better to know than the trial court what he awarded? Yes, the trial court knew that Ms. Heflin was ordered to pay back support. And because of that, he still, and because of the circumstances in the case, and the circumstances and the evidence and the facts of the case, that the trial court knew, he awarded my client both tax exemptions for 2016 going forward. The evidence clearly supported that the petitioner provided the majority of the support for the children. He was owed back support, over $20,000, and there were other evidence and should have been awarded all the tax savings. Simply paying the statutory child support amount, if Ms. Heflin would have, but she hasn't to this date paid that, does not automatically entitle her to any type of tax benefit. That's still an obligation, or that's still a decision that the trial court gets to make. And the trial court made that, and that issue should not be reversed. Now, going forward, starting with the child support calculation. As you can assume, I'm going to rely heavily on the Cole decision that I cited. The court's letter dated August 7th, 2017, states that Ms. Heflin failed to prove her case, that the new child support statute should be used here. As you stated, Your Honor, exhibits were submitted by June 15th. Anything that was filed after that was argument, or was in response to the exhibits that were already submitted. The old calculation should have been applied, and was applied, and that ruling should be upheld. In regards to the college expenses, the 529 accounts, the first argument is regarding the issue that the IRS states that the 529 accounts should be used for. And I completely agree with that. But the trial court awarded those accounts to my client. That doesn't mean that he can just use them for whatever he wants to do with them. But he gets control of them in regards to how he spends those for his sons. He has a younger son. He has Kyle, Eric, who's the older son at this time. That was the one that the 529 account was awarded. And then he also has Kyle, a younger son. I also believe that there's other ways you can spend a 529. He might bear the tax consequences, but that's his bearing to deal with. In regards to the issue as to whether or not Eric lived with him, there was no evidence disputing the fact that Eric lived with him. There was a custody hearing involving the younger child in February of 2017. That child went through an in-camera interview with the judge at the time. It was the same judge that made this ruling. How old was the child? The child had the in-camera. He was in high school. I'm going to say 14 or 15, Your Honor, but I can't recall. As you know, this has kind of been a litigated case for quite some time. And the trial judge has been involved in this and has numerous experiences with the parenting issues. We had a trial. We had a hearing on the parenting issues where numerous parties testified. Both parties testified. A GAL testified. A psychologist testified. And all of that the same judge heard. So there's no disputing. There was no dispute that the oldest child lived with my client. And Section 750 ILCS 5-513B states that reasonable expenses can be paid if the non-minor child is living with a parent. And those expenses include food, utilities, and transportation. There has been, and as you can see in the record, there were several instances, numerous instances, where Lisa Hapland failed to pay ordered expenses. Not only specific money orders where the judge said you pay X amount, but there were also numerous times where you're supposed to divide this expense or divide that expense. And she's continued to fail to do that. My client continued to provide her expenses and, hey, per this order, we're supposed to split this. It never happened. Who better to know that than the trial court? And that is why he then awarded him this 529 sum as a lump sum payment for these expenses per 750 ILCS 5-513. Kind of the final issue, and they're kind of pumped together, I know that there's two separate issues in revolving the AT&T expenses and then the medical and extracurricular activities. First, let me address the AT&T cell phone expenses. Obviously, the trial court believed that those were related to education. He ordered Ms. Hapland to reimburse my client to pay those expenses. We all know that children can use cell phones for lots of things. Kids are allowed cell phones in high school these days. They use them instead of having a graphic calculator. They have their cell phone. You don't have to pay $300 for a graphic calculator anymore. You have your cell phone, and that's what you use. The trial court agreed that that was an educational expense, and Ms. Hapland should have to pay for half of it. What's the standard review for that? I believe it's abuse of discretion, Your Honor. Okay, go ahead. The other issue is that it's specifically all about timing. All about what? It's all about timing, basically, in regards to these expenses. My client submitted numerous exhibits of receipts, payments, canceled checks, and this is in regards to the AT&T expenses, and then also the other issue that Ms. Hapland appealed in regards to expenses and fees. My client submitted the expenses and fees that were within a timeframe that was specifically allowed by the prior orders. Ms. Hapland submitted expenses as well. She submitted expenses for the AT&T. Whether or not she withdrew her request, that's fine, but she did submit them. She also submitted expenses for school, extracurricular, and the such. However, the trial court, and if you look at his seven-page ruling, goes through it, and he specifically shows where her expenses, some of them, and not all of them because she's awarded some credit too, are out of date. This case, these litigants have been involved in this process for a long time. There were temporary orders entered, then there were permanent orders entered, and those orders at certain times specifically stated who should pay what and what was being reimbursed. There were specific orders, specifically on June 30th, the court ordered Lisa to pay the amount of $2,282. Then there were specific orders stating that that amount is in regards to different expenses for different timing. However, the majority of what Lisa submitted was outside the timing to allow for those expenses to be reimbursed. There was a time during this process on a temporary order that Mr. Haslund was ordered to pay child support. At that time, the parties weren't splitting things. They weren't splitting expenses. He was paying child support. She submitted receipts for those expenses, and there were specific orders that specifically stated what dates the court would order reimbursement for. It's all about timing, and the trial judge sat there and reviewed all the expenses. Thank you. Your Honors. Thank you, Counsel. Mr. Berticchio, any rebuttal, sir? Yes, sir. Thank you. Okay. Mr. Conner, again, looking back at that May 4th docket, they're going to submit exhibits, they're going to bring evidence into this case. You will not find in this decision one time what exhibits the court accepted, what exhibits the court denied. It didn't. It just started making pronouncements. That's rather significant. Well, if this had been a hearing that the court took under advisement and evidence was presented, you'd present evidence, the other side would present evidence, the court would listen to it and take it under advisement. You still wouldn't know what the ruling was, would you? Well, I think, yes, I think you would, particularly if the court's going to rely on any particular exhibit. Well, no, I mean, I might come up with a ruling later, but, I mean, I've heard the evidence. The point is, you don't have to address all of those at the moment, do you? Well, if you do not, no. But the evidence has been presented. No. If an exhibit is admitted, it's admitted. If no exhibit is admitted, the court says, I move to admit the exhibit. We object. The court says, I'll take it under advisement. The court, if it's taken under advisement, needs to rule on what it took under advisement. If the court, under many circumstances, I move, I object, admit it. I move, I object, deny it. It's got to be one of three ways, and if it's taken under advisement, then he needs to advise. He needs to give the court and the parties record. He didn't do that in this case. Take the tax exemptions. Did we raise that as an issue? Did we raise that as an issue before the trial court? Yes, we raised it as an issue, saying there is no evidence, that there's no statement as to what evidence the court relied on, such as go to the 529 account issue. The court awarded him the 529 account. First, he can't do it legally, but secondarily, he did it, and there was no evidence as to what exhibit showed these expenses that he was relating it to. We raised that issue. But the court, I'm sorry, but on that issue, it's important to note that the court, unlike counsel, says, well, he can still spend it for college. It can be an approved expenditure. That's not what the order says. The order says he has it to use as he sees fit. That's the new standard now in using that. So he can use that money for his own reimbursement, not to an institution of higher learning. It could result in tax consequences for both parties, and it's consistent with the court's order. The court's order was legally wrong, and it was factually wrong, because there was no facts, evidence designated as to what this evidence shows the expenses he had. It doesn't show that at all. It just assumed that he lived there. Counsel says, well, he took an in-camera interview. How in the world does this court decide whether that evidence came from the in-camera interview? There's no record of the in-camera interview. It was never transcribed. It is nothing other than, and that was on the issue of parenting and custody and parenting responses. Not true. Counsel says she's going to rely on a cold decision. She doesn't rely on a cold decision. She says we got it to him by June 15th. It was before that. It's not right. I've already explained the argument. The 529 account, use it as he says he sees fit. One I didn't mention before, did argue in my brief, that back support. The back support, I don't care what he filed his motion, back support wouldn't become applicable until he had right to get support. He didn't have right to get support until February 17th when the court said from this time forward, the youngest child's going to live with you. At that point, he had a right to get back support. Up until then, he did not. The court's order gave him 10 months' worth of back support. He didn't even have a right to get it legally. So a court can't make a retroactive finding that the child lived with the father and that support was due? A court can, but the court didn't. The court didn't do that. And I respectfully disagree with counsel that this was a well-reasoned decision. It was a long one. He said whatever he wanted to say. He didn't base it on evidence. He didn't make any findings. He didn't say, I'm going to find that the child has lived with Mr. Heffern for X years and he's entitled to child support. He didn't say that at all. He didn't say anything. He just said, I'm going to give that money to Mr. Heffern. The last one on the AT&T, obviously, this was with counsel. Obviously, the AT&T expense, the court said, were related to education. He didn't say that. Again, respectfully, I know the trial judge, but respectfully, he didn't have a well-reasoned decision. He didn't give any reasons at all. He gave you 12 pages of results. The opinion should be vacated and reversed and remanaged at a court for retrial. Thank you, counsel.